UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

SHARON D. COLEMAN,            )
                              )
   Plaintiff,                 )
                              )
v.                            )     Case No: 1:10-cv-264
                              )     Collier/Carter
MICHAEL S. ASTRUE,            )
Commissioner of Social Security, )
                              )
   Defendant.                 )

<u>REPORT AND RECOMMENDATION</u>

     This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner denying the plaintiff a period of disability, disability insurance benefits, and supplemental security income under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, and 1382.

     This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of defendant's motion for summary judgment (Doc. 16 ). The plaintiff has not filed a dispositive motion.

     For the reasons stated herein, I RECOMMEND the decision of the Commissioner be AFFIRMED.

<u>Plaintiff's Age, Education, and Past Work Experience</u>

     Plaintiff was 45 years old on her alleged onset date and had a marginal education (Tr. 22). Plaintiff testified at her June 2009 hearing that she could not work because of her bipolar disorder, lack of education, dyslexia, and difficulty breathing (Tr. 525-27). A vocational expert testified at Plaintiff's June 2009 hearing that Plaintiff had past relevant work as a receptionist,

which was sedentary and semiskilled (Tr. 532).

Applications for Benefits

Plaintiff applied for Social Security Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on August 20, 2007, alleging disability since January 1, 2007, due to dyslexia, bipolar disorder, chronic obstructive pulmonary disease (COPD), and headaches secondary to a stroke and stress (Tr. 14, 59-60). After her applications were denied initially and upon reconsideration, Plaintiff requested an administrative hearing (Tr. 14). The administrative law judge (ALJ) held a hearing on June 18, 2009, and a supplemental hearing on December 1, 2009, at which Plaintiff appeared with counsel[1] and testified (Tr. 518-75). Plaintiff's father, Claude Hawkins, appeared and testified at the June hearing, and Dr. John Davis, a medical expert, and Gary Strugill, a vocational expert, appeared and testified at the December hearing. In a decision dated January 7, 2010, the ALJ found that Plaintiff was not disabled because she could perform her past relevant work, or in the alternative, a significant number of other jobs in the national economy despite the limitations caused by her impairments (Tr. 14-23). On July 29, 2010, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review (Tr. 4). See 20 C.F.R. §§ 404.955, 404.981.[2] Under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff initiated this civil action for judicial review of the Commissioner's final decision.

Standard of Review - Findings of the ALJ

---

[1] Plaintiff's complaint before this Court is pro se.

[2] The regulations governing DIB and SSI are codified independently, but those relevant to this case are virtually identical. Therefore, we cite solely to the regulations governing DIB, found at 20 C.F.R. §§ 404.900-.999 and 20 C.F.R. §§ 404.1500-.1599. The parallel SSI regulations may be found at 20 C.F.R. §§ 416.1400-.1499 and 20 C.F.R. §§ 416.900-.999.

2

Disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §423(d)(1)(A). The burden of proof in a claim for Social Security benefits is upon the claimant to show disability. *Barnes v. Secretary, Health and Human Servs.*, 743 F.2d 448, 449 (6th Cir. 1984); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978). Once, however, the plaintiff makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show there is work in the national economy which he/she can perform considering his/her age, education and work experience. *Richardson v. Secretary, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Secretary, Health and*

3

*Human Servs.*, 790 F.2d 450 n. 4 (6th Cir. 1986).

As the basis of the decision of May 21, 2008 that plaintiff was not disabled, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2012.

2. The claimant has not engaged in substantial gainful activity since January 1, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: chronic obstructive pulmonary disease; and bipolar disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can sit for six hours and stand or walk for four hours in an eight–hour workday; and frequently lift up to ten pounds and occasionally lift 15 pounds.

6. The claimant is capable of performing past relevant work as a telephone operator, sedentary exertional level, semiskilled (SVP-3). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2007 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 16-23).

## Issue Presented

The *pro se* plaintiff has filed no brief before this court asserting or raising any specific

assignment of error. The undersigned has reviewed the administrative record to determine if the ALJ's findings/Commissioner's decision denying benefits to Plaintiff is supported by substantial evidence in the record.

Relevant Facts

A. Medical Evidence of Physical Condition:

In June 2005, Marcus Lee, M.D., Plaintiff's primary care physician, reported she had been treated for many years for anxiety, depression, hypertension, onchomyosis, tobacco abuse, COPD, and bipolar disorder (Tr. 146).

Magnetic resonance imaging (MRI) of Plaintiff's brain in November 2005 was normal (Tr. 166, 169). Chest x-rays in December 2006 showed hyperaerated lungs (possibly consistent with COPD) (Tr. 163).

In October 2005, Plaintiff reported a sudden onset of feeling light-headed (Tr. 202). A chest x-ray was within normal limits, and an additional x-ray in June 2007 was unchanged (Tr. 191, 206).

Also in February 2008, Emelito Pinga, M.D., evaluated Plaintiff's reports of COPD, stroke, migraine headaches, and heart problems (Tr. 247). Plaintiff reported a history of smoking two packs of cigarettes per day through the time of the evaluation (Tr. 247). She reported being told in July 2006 that she had suffered a slight stroke, but a brain MRI was reportedly negative; she displayed no symptoms of a prior stroke on examination (Tr. 248). Other than a few wheezes and rhonchi in both lungs, Plaintiff's examination was essentially normal (Tr. 250-52). Dr. Pinga opined Plaintiff could sit for six hours and stand or walk for four hours in an eight-hour workday, and frequently lift up to 10 pounds and occasionally lift 15 pounds (Tr. 252-53).

5

In March 2008, Denise Bell, M.D., reviewed the medical evidence and opined Plaintiff had no exertional limitations and, nonexertionally, she should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation (Tr. 274-77).

In May 2008, Reeta Misra, M.D., reviewed the medical evidence and opined Plaintiff had no exertional limitations and, nonexertionally, she should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation (Tr. 362-66).

Plaintiff was prescribed a home oxygen service in June 2008 (Tr. 317).

Later in June 2008, John Boldt, M.D., evaluated Plaintiff's shortness of breath, COPD, and possible emphysema (Tr. 352). Despite her symptoms and need to use oxygen, Dr. Boldt noted that Plaintiff continued to smoke two packs a day and "clearly [did] not want to stop" (Tr. 352-53). Dr. Boldt advised her that her breathing would not improve as long as she continued to smoke (Tr. 353).

In August 2008, Rohit Gupta, M.D., saw Plaintiff for assessment of kidney disease (Tr. 356-59). Plaintiff reported she could perform all activities of daily living, though extra time might be needed; she reported no cardiac complaints (Tr 358). Dr. Gupta diagnosed chronic kidney disease, hypertension, bipolar disorder, and hematuria (Tr. 357).

In May 2009, Plaintiff was seen at Chattanooga Primary Care for complaints of neck pain (Tr. 450). Plaintiff reported that her mental symptoms were stable (Tr. 450). Other than pain with range of motion in her neck, Plaintiff's physical examination was normal (Tr. 451). X-rays of Plaintiff's cervical spine showed mild degenerative changes (Tr. 449). She was diagnosed with neck pain (Tr. 451).

A note from Plaintiff's primary care physician in September 2009 indicated better control of

her blood pressure since a medication adjustment (Tr. 494).

    B. <u>Medical Evidence of Mental Condition</u>

In December 2006, Plaintiff underwent an assessment at Volunteer Behavioral Health Care System, which indicated she had major depressive disorder (recurrent, severe with psychotic features) and bipolar disorder, and assigned her a Global Assessment of Functioning (GAF) score of 45 (Tr. 153), indicative of "serious symptoms."[3] Her medications were adjusted and she scheduled for a follow-up in six weeks (Tr. 154).

In February 2008, David Caye, M.S., a senior psychological examiner, evaluated Plaintiff (Tr. 239-46). Mr. Caye deemed his evaluation invalid, noting that Plaintiff's response to questions throughout the evaluation "strain the concept of believability to the point of self-report being deemed noncredible" (Tr. 239, 243). Mr. Caye administered the Test of Memory Malingering, which was "highly positive for feigned/magnified symptomatology" (Tr. 245). Given the absence of acceptable information, Mr. Caye was unable to assess Plaintiff's level of functioning (Tr. 245-46).

Plaintiff resumed counseling with Volunteer Behavioral Health Care System in August 2007, with no risk factors noted during the session to warrant a change in session intensity (Tr. 282). By April 2008, Plaintiff reported that her medications were working and she was able to

---

    [3] The GAF scale reflects a "clinician's judgment" of the individual's symptom severity or level of functioning. American Psychiatric Association, <u>Diagnostic & Statistical Manual of Mental Disorders</u>, 32-33 (4th ed., Text Rev. 2000) (<u>DSM-IV-TR</u>). The higher the number, the higher the level of functioning. <u>Id.</u> A GAF score of 61-70 reflects "some mild symptoms" or "some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well." <u>Id.</u> at 34. A GAF score of 51-60 reflects "moderate symptoms" or "moderate difficulty in social, occupational, or school functioning." <u>Id.</u> A GAF score of 41-50 reflects "serious symptoms" or "any serious impairment in social, occupational, or school functioning." <u>Id.</u>

sleep and eat but reported rejection from family resulting in her isolating at home (Tr. 279). Treatment notes from 2007 through May 2009 indicated that Plaintiff's GAF scores ranged from 45 to 60 (Tr. 296-306, 406-29, 436-46). A letter from Angela Wells, MSN, dated June 23, 2009, reported that Plaintiff's GAF scores of 45 to 50 reflected her chronic suicidal ideation, anxiety, and panic symptoms. At a level of 60 she opined Plaintiff continued to experience a moderate difficulty in her level of functioning (Tr. 462).

In August 2009, Dee Langford, Ed.D., evaluated Plaintiff (Tr. 463-67). Dr. Langford noted that Plaintiff gave the impression she may have been "malingering and/or exaggerating her symptoms" (Tr. 467). Plaintiff had mild to moderate problems with memory, moderate problems with concentration, and mild problems with social relating and adaptability to change. Dr. Langford diagnosed Plaintiff with a learning disorder and a mood disorder, suspected possible malingering and hypochondriasis, and assigned her a GAF score of 60 (Tr. 467). Dr. Langford opined that Plaintiff would have moderate difficulty understanding, remembering, and carrying out complex instructions; making judgments on complex work-related decisions; interacting appropriately with supervisors and coworkers; and responding appropriately to usual work situations and to changes in a routine work setting (Tr. 468-69). She also opined Plaintiff would have mild difficulty interacting appropriately with the general public, but had no other mental limitations (Tr. 468-69).

Additional notes from Volunteer Behavioral Health Care System through October 2009 continued to show GAF scores around 50 (Tr. 509-14). Plaintiff continued to smoke through October 2009 and still required daily oxygen therapy (Tr. 509).

Dr. Davis, a clinical Psychologist, testified as a medical expert at Plaintiff's December 2009

hearing that he was in agreement with the findings of Dr. Langford's August 2009 psychological evaluation, including Dr. Langford's opinion regarding Plaintiff's residual functional capacity (Tr. 555-558).

The ALJ questioned the medical expert about the opinion letter from Angela Wells (Tr. 462) and Plaintiff's allegations of chronic suicidal ideation, anxiety, and panic (Tr. 557, 558). The ALJ asked the medical expert about the lack of supporting evidence. The medical expert responded:

> ME: I think that's exactly correct. That's what I was saying. There's just not a – there's not a history here of where she's been an inpatient or – in her treatment at Behavioral Volunteer Health Systems seems to be very sporadic, and at times, they will note that her symptoms seem mild. And other times, they'll say severe, but it just does not look like a typical record of someone who has been disabled primarily because of her mental disorder.

C. <u>Vocational Testimony</u>:

A vocational expert testified at Plaintiff's June 2009 hearing that Plaintiff had past relevant work as a receptionist, which was sedentary and semiskilled (Tr. 532). The ALJ asked a second vocational expert at Plaintiff's December 2009 hearing whether Plaintiff could perform her past relevant work if she could sit for six hours and stand or walk for four hours in an eight-hour workday; frequently lift up to 10 pounds and occasionally lift 15 pounds; had moderate difficulty understanding, remembering, and carrying out complex instructions; making judgments on complex work-related decisions; interacting appropriately with supervisors and coworkers; and responding appropriately to usual work situations and to changes in a routine work setting; and had mild difficulty interacting appropriately with the general public (Tr. 571-72). The vocational expert testified that such limitations would not preclude semiskilled work, and Plaintiff could

9

perform her past relevant work as she performed it (Tr. 572). She could also perform unskilled work at the reduced light and full sedentary levels (Tr. 572).

Analysis

The ALJ found Plaintiff was significantly limited due to her impairments, but was not disabled because she could perform light work that required no more than six hours of sitting and four hours of standing/walking in an eight-hour day, and lifting no more than ten pounds frequently and 15 pounds occasionally (Tr. 16, 20). The medical evidence, including medical source opinions and clinical and diagnostic testing, supports the ALJ's findings regarding the nature and severity of Plaintiff's limitations. The ALJ considered Plaintiff's allegations of disabling symptoms and limitations, but found that they were less than credible and fully explained his analysis. I conclude the record supports these findings. The ALJ's residual functional capacity finding accommodated the limitations supported by the credible evidence in the record.

The ALJ's physical residual functional capacity finding reflected the opinion of Dr. Pinga (Tr. 17, 20, 252-53). The ALJ also generally gave great weight to Plaintiff's treating physicians (Tr. 21). As the Commissioner notes, no treating physician offered any restrictions more limiting than Dr. Pinga's, and several opined that Plaintiff's primary impairment was her smoking/tobacco abuse (Tr. 146, 353). Drs. Bell and Misra opined Plaintiff had no exertional limitations and, nonexertionally, she should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation (Tr. 274-77, 362-66).

Turning to Plaintiff's mental limitations, Dr. Davis testified as a medical expert at

Plaintiff's December 2009 hearing that he was in agreement with the findings of Dr. Langford's August 2009 psychological evaluation, including Dr. Langford's opinion regarding Plaintiff's residual functional capacity (Tr. 555-558). Dr. Langford's opinion as to these limitations were presented by the ALJ to the vocational expert, who testified such limitations would not preclude Plaintiff from performing semiskilled work (Tr. 572). The ALJ explained that he gave less weight to the June 2009 opinion of Ms. Wells because she was not an acceptable medical source (Tr. 21). *See* 20 C.F.R. §§ 404.1513, 404.1527(a)(2). The ALJ further noted that Ms. Wells failed to note that Plaintiff had admitted having suicidal feelings long before her alleged onset date, and was able to maintain employment at the substantial gainful activity level despite what Ms. Wells considered an "extreme impairment" (Tr. 21, 462). I conclude there is substantial evidence to support the conclusions of the ALJ as to Plaintiff's alleged mental limitations.

The ALJ's credibility assessment also supports the ALJ's findings. The ALJ noted Plaintiff "made frequent contradictory statements on material facts and appears to chronically exaggerate or shade her symptoms into appearing more limiting" (Tr. 21). Dr. Langford noted Plaintiff gave the impression that she may have been "malingering and/or exaggerating her symptoms" (Tr. 467). Mr. Caye deemed his evaluation of Plaintiff invalid, noting that her responses to questions throughout the evaluation "strain the concept of believability to the point of self-report being deemed noncredible" (Tr. 239, 243). The ALJ as an example points to the lack of support for Plaintiff's alleged stroke in 2006, such as the lack of evidence of a prior stroke, including one-sided muscular effects, noted in Dr. Pinga's evaluation (Tr. 21, 248). The ALJ noted Plaintiff continued to smoke cigarettes despite her need for home oxygen service (Tr. 17). *See* 20 C.F.R. § 404.1529(c)(3)(i) (claimant's daily activities are relevant to claimant's symptoms, such

11

as pain). The Commissioner argues the ALJ reasonably considered the applicable credibility factors in this case, and urges the Court to give his assessment great weight. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) ("[A]n ALJ's credibility determinations about the claimant are to be given great weight . . ."); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying."). Looking at the record as a whole I agree and conclude there was substantial evidence to support the credibility findings of the ALJ.

<u>The Vocational Expert's Testimony Constitutes Substantial Evidence</u>

The ALJ's hypothetical question to the vocational expert, as discussed above, is supported by substantial evidence from the record. Under *Varley v. Sec'y of HHS*, 820 F.2d 777, 779 (6th Cir. 1987), the vocational expert's response to a hypothetical question constitutes substantial evidence when the ALJ's residual functional capacity finding is supported by substantial evidence and it is accurately reflected in the hypothetical question. Therefore, substantial evidence supports the ALJ's finding that Plaintiff could perform her past relevant work.

## Conclusion

Having carefully reviewed the administrative record, I conclude there is substantial evidence in the record to support the findings of the ALJ and the decision of the Commissioner. Accordingly, I RECOMMEND:

    (1) The defendant's motion for summary judgment (Doc. 16) be GRANTED.

    (2) The case be DISMISSED. [4]

*s/William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE

---

[4] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).

13